UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Buchanon,

    Plaintiff,

v.                                            Case No.  15-13960

The Prudential Insurance Company          Honorable Sean F. Cox
of America,

    Defendant.

_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S STATEMENT OF PROCEDURAL CHALLENGE (DOC. #8)

This is an ERISA claim for Long Term Disability ("LTD") benefits, which Plaintiff Michael Buchanon ("Plaintiff") asserts were improperly denied. This matter is currently before the Court on Plaintiff's Statement of Procedural Challenge. (Doc. #8). The matter has been fully briefed by the parties and oral argument was entertained as to this motion on July 19, 2016.

Plaintiff argues that he was denied a "full and fair review" of his claim because Defendant Prudential Insurance Company of America ("Defendant") failed to provide Plaintiff with the underlying raw test data of its independent examiner when Plaintiff requested a copy of his claim file. Plaintiff requests that the Court: (1) preclude Defendant from relying on the conclusions of either Richard Gelb, PhD or Kristin Fabiano, PhD; or, alternatively, (2) allow discovery as to the raw data and consequently supplement the administrative record after the raw data has been produced and reviewed.

For the reasons stated below, the Court shall **DENY** Plaintiff's challenge.

1

# BACKGROUND

### A. Factual Background

Plaintiff was an employee at DTE Energy ("DTE") at all times relevant to this action. (Doc. #1, Compl. at ¶ 2). Defendant issued group disability policies ("DTE Plan") to DTE as an insured welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). (*Id*. at ¶ 4). The DTE Plan is insured and administered by Defendant. (*Id*. at ¶ 5).

In April 2012, Plaintiff underwent spine surgery. Defendant subsequently approved Plaintiff's claim for LTD benefits for two years from April 24, 2012 through April 23, 2014. (Doc. #13, Ex. A to Def.'s Resp.).

In 2014, at Defendant's request, Plaintiff underwent two Independent Medical Examinations ("IME"). Dr. Maury Ellenberg performed an IME on May 12, 2014. Dr. Richard Gelb, a Neuropsychologist, performed an IME on July 11, 2014. On August 29, 2014, Defendant issued a termination of benefits letter to Plaintiff. (Ex. A to Def.'s Resp.). In it, Defendant advised that Dr. Gelb had conducted a neuropsychology test on July 11, 2014, and that Defendant had relied in part on Dr. Gelb's report/findings. (*Id*.).

On October 7, 2014, Plaintiff requested a copy of his claim file. (Ex. B to Def.'s Resp.). In this letter, Plaintiff's counsel sought 23 items in connection with Plaintiff's benefits under the plan. It is worth noting that Plaintiff did not specifically request the "raw data" underlying Dr. Gelb's NPT examination. On October 14, 2014, Defendant responded with an entire copy of Plaintiff's claim file. (Ex. C. to Def.'s Resp.). Plaintiff concedes that Defendant provided 435 pages of records and documents. (Pl.'s Br. at 3).

On February 20, 2015, at Plaintiff's request, Dr. Walter L. Sobota, PhD, conducted a

2

review of Dr. Gelb's NPT exam.  (Ex. D to Def.'s Resp.).  Dr. Sobota noted that while he did not have the opportunity to review the "actual raw test data that Dr. Gelb used to formulate his conclusions," he was able to make several observations and conclusions based upon the "narrative report and the summary test scores made available."  (*Id*.).

On February 24, 2015, Plaintiff filed an administrative appeal of the claims denial decision.  (Ex. E to Def.'s Resp.).  In his appeal, Plaintiff objected to Defendant's failure to produce Dr. Gelb's raw data.  (*Id*.).  Plaintiff raised the issue of "raw data" for the first time in his appeal.  Specifically, Plaintiff argued that he was "deprived of the opportunity to assess the validity of [Dr. Gelb's] methodology, the underlying data and thereby his conclusions."  (*Id*.).

On May 6, 2015, Defendant responded to Plaintiff's appeal and informed that it was continuing its review of Plaintiff's claim for LTD benefits.  (Ex. F to Def.'s Resp.).  Defendant further advised that Plaintiff's claim file did not contain the raw test data generated by Dr. Gelb.  (*Id*.).  Defendant defined "raw/test data" as "the patient's specific answers, whether spoken or written, generated in drawings, or recorded by computers or other lab devices."  (*Id*.).  To complete its review, Defendant asked that Plaintiff sign an attached "Neuropsychological Raw/Test Data Release Form" so that Defendant's Neuropsychological reviewer on appeal could access the raw data *directly* from Dr. Gelb.  (*Id*.).

On May 27, 2015, Kristin Fiano, PhD, conducted an independent neuropsychological file review.  (Ex. H to Def.'s Resp.).  Dr. Gelb's neuropsychological evaluation, the associated raw data, and a letter dated 3/25/15 were among the medical records reviewed by Dr. Fiano.  (*Id*.).

On May 28, 2015, Defendant issued its decision on appeal affirming the termination of Plaintiff's LTD benefits effective April 23, 2014.  (Ex. I to Def.'s Resp.).

**B.     Procedural Background**

Plaintiff brought this action on November 10, 2015, asserting a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a)(1)(B), seeking to recover LTD benefits pursuant to an employee benefit plan.

This Court's scheduling order for ERISA cases sets out the following protocol for procedural challenges:

> [E]ach party shall file a pleading titled "Statement of Procedural Challenge in ERISA Case" or "Statement of NO Procedural Challenge in ERISA Case" as appropriate.  The Statement shall indicate whether the party asserts a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias, and shall indicate the nature of the procedural challenge.

(Doc. #5, at 2) (emphasis in original).

Plaintiff filed a Statement of Procedural Challenge on February 19, 2016.  (Doc. #8, Pl.'s Br.).  Plaintiff alleges that he "was entitled to 'raw data' generated by the examiner hired by Defendant which was relied upon in the claims denial decision." (*Id*. at 6).  He further alleges that "there should be no dispute that Plaintiff was denied a 'full and fair review' as a result of Defendant's failure to produce the requested information." (*Id*.).  Plaintiff also summarily requests that the Court conduct *de novo* review as a result of the alleged "procedural irregularity." (*Id*. at 7).

Defendant opposes Plaintiff's Statement of Procedural Challenge.  Defendant contends that: (1) it provided Plaintiff with the entire claim file – including the Dr. Gelb's *reports*, which were relied upon by Defendant; (2) that it never reviewed/relied upon Dr. Gelb's raw test data in determining Plaintiff's claim; (3) that as a matter of regular business practice, Defendant did not receive the raw test data from neuropsychological testing; and (4) that Plaintiff was on notice

4

that the raw data existed and could have directly requested the data himself. (Def.'s Resp. at 6-14). Defendant concludes that "Plaintiff sat on his hands and now makes the instant procedural challenge to rectify his error." (*Id*. at 12).

## ANALYSIS

### A. Plaintiff's Procedural Challenge

At the crux of Plaintiff's procedural challenge is Defendant's failure to provide him with the raw test data that was generated by Dr. Gelb.[1] Plaintiff now seeks one of two things: (1) Defendant should be precluded from relying on the conclusions of Dr. Gelb or Dr. Fiano; or (2) the Court should allow discovery as to the raw data and Plaintiff should be permitted to supplement the administrative record after the raw data has been produced and reviewed. Plaintiff has offered very little analysis as to each request.

As to Plaintiff's first request, Plaintiff offers no authority to support preclusion. As to Plaintiff's second request, Plaintiff's arguments are misplaced and without merit.

### 1. The Court Should Not Consider Evidence Outside of the Administrative Record & Should Not Supplement the Administrative Record with Such Evidence

Generally, when reviewing the decision of a benefits administrator in an ERISA action, "a district court may only consider evidence that was first presented to the administrator." *Wilkins*, 150 F.3d at 619. A narrow exception to this general rule permits district courts to consider other evidence "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator

---

[1] At oral argument, Plaintiff's counsel advised the Court that the raw data constitutes the actual writings generated by Plaintiff from the tests administered by Dr. Gelb.

or alleged bias on its part." (*Id.*).

"[P]rocedural due process requires adequate notice and an opportunity to be heard." *Schey v. Unum Life Ins. of North America*, 145 F. Supp. 2d 919, 922 (N.D. Ohio June 4, 2011) (citing *Brody v. City of Mason*, 250 F.3d 432 (6th Cir. 2001)). Thus, a plan administrator must provide a claimant with the notices required by the plan and with the opportunity to submit additional evidence in support of his claim. (*Id.*). Failing to do either "can open the door to additional evidence." (*Id.*).

### i.     **ERISA Notice Requirements – Full and Fair Review**

29 U.S.C. § 1133 provides that every employee benefit plan must:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Essentially, 29 U.S.C. §1133 serves two purposes: "(1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant with an opportunity to have that decision reviewed by the fiduciary." *Wenner v. Sun Life Assurance Co. of Can.*, 482 F.3d 878, 882 (6th Cir. 2007) (emphasis omitted). Here, Plaintiff does not argue that Defendant failed to notify him of the specific reasons for the claim denial. Nor does Plaintiff argue that he was denied an opportunity to have the decision reviewed.

ERISA also requires that a claimant be provided, *upon request* and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits. 29 C.F.R. § 2650.503–1(h)(2)(iii). A document is relevant if: (1) it was

relied upon in making the benefits determination; or (2) if it was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information is relevant to a claim for benefits.  29 C.F.R. § 2560.503–1(m)(8).

The Court understands this to mean: (1) Plaintiff must request certain documents; and (2) Defendant must turn over any requested document, if relevant to the claim for benefits. Defendant's obligation to produce relevant documents only arises after Plaintiff makes an initial request.

### ii. Plaintiff Was Not Denied Due Process/Full and Fair Review

Plaintiff appears to be arguing that he was denied due process.  Specifically, Plaintiff argues that he was "denied a 'full and fair review' [of his claim] as a result of Defendant's failure to produce the requested information."  (Pl.'s Br. at 4).  This argument is without merit.

First, "[a] claimant's failure to fully explore and exercise [his] procedural rights does not undermine the fundamental fairness of an otherwise full and fair administrative review process." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010).  Here, Plaintiff did not specifically request the raw data underlying Dr. Gelb's neuropsychological exam.  In fact, Plaintiff made no mention of the raw data until his objection to Dr. Gelb's report in his appeal.  Thus, while it is true that Defendant is required to produce relevant documents, Plaintiff was first required to *request* a copy of such documents.[2]

---

[2] Among the documents requested by Plaintiff's counsel: (1) medical records **reviewed by** the plan administrator; (2) all **reports** produced at the request of the insurer regarding Plaintiff; (3) any and all other **documented information that may have influenced the insurer's decision** to deny his claim for benefits; and (4) all information **from** third party sources, such as consultants.  (Ex. B to Def.'s Resp.) (emphasis added).  To the extent that

7

Second, notably missing from Plaintiff's argument is any analysis as to how failing to provide raw data–which was never specifically requested by Plaintiff and which was not in Defendant's possession–amounts to a denial of due process. Plaintiff cannot explain how Defendant's failure to produce the raw test data is significant or outcome determinative here. Defendant's procedural failure did not necessarily prevent Plaintiff from gaining the information necessary to contest his denial of benefits. In fact, despite the unavailability of raw data, Plaintiff did contest Dr. Gelb's findings through Dr. Sobota's independent review. It is also worth noting that Defendant provided Plaintiff with test scores, which constitute a written summary of the raw data.[3] Moreover, Defendant is correct in that Plaintiff was on notice that Dr. Gelb had performed a number of tests on him and that he could have requested the data from Dr. Gelb directly.

Third, Defendant has declared that it neither possesses nor relies upon raw test data in the ordinary course of business. (Ex. J to Def.'s Resp., Degroot Decl.). Defendant has further declared that it provided Plaintiff with his entire claim file, including all documentation that Defendant received and generated during the course of reviewing Plaintiff's claim for benefits. (*Id*.). To counter Defendant's statements, Plaintiff mistakenly relies on *Collins v. Liberty Life Assurance Co. of Boston*, 988 F. Supp. 2d 1105 (C.D. Cal. Dec. 11, 2013).[4]

---

Plaintiff argues that these requests constitute requests for raw data, the Court disagrees. Based upon these general requests, Plaintiff cannot reasonably expect Defendant to have been on notice that Plaintiff was actually requesting raw data, which Defendant neither possessed nor relied upon.

[3] At oral argument, Plaintiff's counsel advised that the test scores were a written summary of the raw data.

[4]In *Collins*, the plaintiff underwent neuropsychological testing before subsequently being denied LTD benefits. *Collins*, 988 F. Supp. 2d at 1118. The *Collins* plaintiff then requested

8

The only pertinent similarities between the plaintiff in *Collins* and Plaintiff here is that both plaintiffs underwent neuropsychological testing and the raw data underlying the tests were not a part of the claim files. However, unlike the plaintiff in *Collins*, Plaintiff here **did not specifically request** the raw data underlying Dr. Gelb's reports. Moreover, the *Collins* court was not determining whether the plaintiff was afforded a "full and fair review." Nor was the *Collins* plaintiff attempting to supplement the administrative record with raw test data. Instead, the court was determining the appropriate degree of deference to afford the administrator's denial of benefits. (*Id*. at 1127). Accordingly, any reliance on *Collins* is misplaced.

For these reasons, the Court shall not supplement the administrative record with the raw data Plaintiff seeks.

**B.     Arbitrary and Capricious Standard of Review Applies**

To the extent that Plaintiff requests *de novo* review, this argument is without merit. Notably, Plaintiff's Statement of Procedural Challenge fails to support the request with ***any*** analysis or applicable law. (Doc. #8, at 7). Moreover, Plaintiff's attempt to develop this argument in his Reply, (Doc. #14, at 5-6), is not persuasive.

---

certain documents in preparation for appeal. Among the plaintiff's requests was a request for the entire claim file and the raw test data underlying the neuropsychological testing. (*Id*. at 1127). In response to the plaintiff's request for raw test data, the defendant stated that the data was not a part of the claim file and that it only considered the report in making the benefits determination. (*Id*.).

To determine the appropriate degree of deference, the *Collins* court was required to consider the defendant's course of dealing with the plaintiff. (*Id*.). The court noted, among other things, that the defendant failed to engage in meaningful dialogue with the plaintiff when it refused to produce the requested raw data. (*Id*.). The court concluded that the defendant "relied on the [raw data] underlying the results [and] [b]y failing to disclose data on which it relied, [the defendant] failed to satisfy the requirement of 'meaningful dialogue.'" (*Id*.). The Court also concluded that [a]ny relevant data must be disclosed for [the defendant] to meet its communication requirement." (*Id*.)

9

A benefits claim "is to be reviewed under a *de novo* standard **unless** the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). When a plan contains "a broad grant of discretionary authority to determine eligibility for benefits and to construe the terms of the plan," the Sixth Circuit has determined that review under the arbitrary and capricious standard is appropriate. *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066-68 (6th Cir. 1998). Under this "highly deferential" standard, an administrative decision will be upheld so long as it is "rational in light of the plan's provisions." (*Id.*) (internal citations and quotations omitted).

Here, Defendant's plan documents confer a clear grant of discretion on the administrator to interpret the plan. (Doc. #13, at 14-16). Accordingly, the arbitrary and capricious standard of review should apply. Plaintiff's argument to the contrary is misplaced.

For the first time in his Reply, Plaintiff argues that "[t]he Sixth Circuit has held that courts must sometimes abandon a deferential standard of review when plan administrators do not comply with proper procedures." (Doc. #14, at 5) (citing *Cramer v. Appalachian Regional Healthcare*, 2013 WL 5442215, at *2 (E.D. KY Sept. 27, 2013) (internal citations omitted)).

To determine whether the alleged procedural violations require courts to abandon the arbitrary and capricious standard of review, a court "must determine whether the Committee was in 'substantial compliance' with ERISA's procedures." *Cramer*, 2013 WL 5442215 at *3 (internal citations and quotations omitted). Courts should "not disturb a benefits decision based on a procedural defect when the underlying purposes of 29 U.S.C. § 1133, to ensure notice and an opportunity for review, are fulfilled." *Stoll v. W. & S Life Ins. Co.*, 64 Fed. App'x 986, 991

10

(6th Cir. 2003).

Plaintiff does not argue that Defendant failed to "substantially comply" with ERISA's procedures. Instead, Plaintiff argues that he was "denied an opportunity to 'assess the validity of (Dr. Gelb's) methodology, the underlying data and thereby his conclusions.'" (Doc. #14, at 6). Plaintiff provides no analysis as to how this alleged procedural defect deprived him of adequate notice of the Committee's decision and his subsequent right to pursue a civil action. Nor does Plaintiff provide any analysis as to how Defendant's failure to provide raw data denied him an opportunity for review. It is also worth noting that Plaintiff did assess the validity of Dr. Gelb's conclusions through Dr. Sobota's independent review.

Accordingly, the Court shall not abandon the arbitrary and capricious standard of review.

## CONCLUSION

For the foregoing reasons, the Court shall **DENY** Plaintiff's Statement of Procedural Challenge. The Court therefore declines to permit additional discovery and declines to supplement the administrative record with such discovery.

**IT IS FURTHER ORDERED** that the parties shall file their cross-motions and briefs to reverse or affirm the administrator's decision **on or before September 12, 2016.**

**IT IS SO ORDERED.**

                           S/Sean F. Cox
                           Sean F. Cox
                           United States District Judge

Dated: August 2, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2016, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager Generalist